IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES PICKERING, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:10-CV-633-WKW |
| | ) | [WO] |
| LORILLARD TOBACCO | ) | |
| CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Plaintiff James Pickering Jr., a retired sales representative for Defendant Lorillard Tobacco Co., Inc., brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, on behalf of himself and all others similarly situated, alleging that his former employer violated the FLSA's mandatory overtime provisions.  He moves the court to certify this case conditionally as a collective action under the FLSA and seeks nationwide notice.  Alternatively, Mr. Pickering moves to compel discovery.  Lorillard opposes the motions and also moves the court to exclude the affidavit from Mr. Pickering's expert, Lyndell L. Erwin, for failure of Mr. Pickering to designate his expert within the time prescribed by the court's scheduling order.

Before the court are (1) Mr. Pickering's Motion for Conditional Class Certification and for Judicial Notice (Doc. # 36), (2) Mr. Pickering's Motion to Compel (Doc. # 36-1), and (3) Lorillard's Motion to Strike Plaintiff's Expert Affidavit and Exclude Testimony from Plaintiff's Expert (Doc. # 60). The motions have been fully briefed. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Mr. Pickering's motions are due to be denied, and that Lorillard's motion is due to be granted.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested, and there are adequate allegations of both.

## III. FACTUAL AND PROCEDURAL BACKGROUND

A.   <u>**The Parties**</u>

Lorillard is the third largest cigarette manufacturer in the United States and employs 770 full-time sales representatives nationwide. (Sparrow's Decl. ¶ 3 (Doc. # 45).) Sales representatives are part of Lorillard's field sales operations, which are divided into 4 geographic areas, which in turn comprise 20 regions, 122 divisions and 787 territories. (Gershengorn's Decl. 13–14; Sparrow's Decl. ¶ 4.) Each area is supervised by an area vice president; each region is supervised by a regional sales manager; and each division is supervised by a division manager. (Sparrow's Decl.

2

¶ 4.) Lorillard classifies its sales representatives as exempt from the FLSA-mandated overtime compensation provisions.

Mr. Pickering, the sole plaintiff, worked for Lorillard as a full-time, salaried sales representative from June 9, 1979, until his retirement nearly three decades later on December 31, 2008.  (Pl.'s Dep. 10–11 (Ex. 7 to Doc. # 44).)  His division manager was Hugh Gordon Kirkham, and his regional sales manager was Glenn Seger.  (Pl.'s Dep. 12, 21; Kirkham's Decl. ¶ 1 (Ex. C to Doc. # 36).)

## B.   <u>Evidence Pertaining to Mr. Pickering's Job Duties as a Lorillard Sales Representative</u>

Mr. Pickering worked in the Montgomery/Prattville division (Division # 518), and his territory consisted of eight or nine counties, primarily rural, in west central Alabama.  (Pl.'s Dep. 11–13; Gershengorn's Decl., Ex. 1.)  He traveled daily to retail stores that carried Lorillard products, "work[ing] primarily as an account representative" to "promot[e] [Lorillard's] company products."  (Pl.'s Decl. ¶ 2.)  He spent "most of [his] time . . . doing promotional type work," such as "setting up displays, posters, and points of sales" to inform customers about a retail store's brand availability.  (Pl.'s Decl. ¶ 2.)

Mr. Pickering's sales activities were limited because retailers generally purchased Lorillard's products through wholesalers.  He carried a small amount of

products in his vehicle, however, and provided them to Lorillard's clients when necessary "to maintain freshness" or to cover a retailer's inventory shortage, and on "rare occasions," he "took presale orders . . . for new products." (Pl.'s Decl. ¶ 7.) Hence, Mr. Pickering contends that his job entailed "primarily marketing and merchandising of Lorillard products." (Am. Compl. ¶ 11.)

Mr. Pickering was scheduled to work "in the field" from 8:00 a.m. to 5:00 p.m. Monday through Friday, with the exceptions of an hour lunch break and an hour each Friday for the completion of administrative tasks. (Pl.'s Dep. 36.) In addition to his work in the field each day, Mr. Pickering, "[a]fter hours, had to write and answer e-mails and evaluate sales areas on [his] own time," and, thus, he "routinely worked in excess of forty hours in a week and was not paid overtime compensation." (Pl.'s Decl. ¶ 3; Pl. Dep. 107 (testifying that he had to complete "computer work after five o'clock after [he] got home").) Mr. Pickering typically spent six to eight hours every week (one to two hours each work night) answering and responding to e-mails in the evening after he got home from an 8:00 a.m. to 5:00 p.m. work day. (Pl.'s Dep. 109–10.) Responding to these e-mails, most of which were sent by his division manager, Mr. Kirkham, required him to prepare spreadsheets and identify "problem[ ]" stores. (Pl.'s Dep. 107, 109–10.) Mr. Pickering worked on his e-mail

responses at home in the evening because he was "under the impression" that his division manager "wanted those e-mails done when he sent them."  (Pl.'s Dep. 118.)

As further support for his contention that Lorillard expected him to work more than forty hours a week, Mr. Pickering cites Lorillard's written policy that provides as follows:

> Field sales employees are hired on the basis of a 40-hour work week, 8 hours per day, not including a 1-hour lunch break (exclusive of a 1-hour lunch period), with working hours from 8:00 a.m. to 5:00 p.m. However, operations may require a longer work day.  The lunch period naturally has to be scheduled into the operating requirements of the assignment.

(Pl.'s Reply 18 (citing Ex. C to Doc. # 59).)

Lorillard contends, on the other hand, that sales representatives are not required to work more than forty hours a week.  (Def.'s Br. 22 n.8.)  Lorillard provides declarations from current sales representatives working in Arizona, Georgia, New Jersey, New York, North Carolina, Maine, Oregon and Rhode Island.  Each sales representative asserts that he or she has never been required or expected to work more than forty hours a week, that he or she does not work more than forty hours a week, and that Lorillard does not require its sales representatives to respond to e-mails on their own time.  Rather, each sales representative asserts that Lorillard allots one hour of administrative time on Fridays to complete paperwork and computer tasks and that

5

the allotted hour is sufficient for the completion of those tasks.  (Decls. (Docs. # 46–50, 53–54).)

## C.   Evidence Pertaining to Job Duties of Other Lorillard Sales Representatives

Mr. Pickering submits two declarations relevant to the job duties of other Lorillard sales representatives.  The first is from Brandon Lynum, who worked in the same region as Mr. Pickering.[1]  Mr. Lynum was a full-time, salaried sales representative for Lorillard for one year.  (Lynum's Decl. ¶¶ 1, 5 (Ex. F to Doc. # 36).)  He "spent the majority of [his] time calling on retailers and wholesalers and servicing accounts" and was primarily involved in "promoting [Lorillard's] company products," which included "setting up displays, posters, and points of sale." (Lynum's Decl. ¶ 2.)  His sales activities were restricted in the same manner as Mr. Pickering's.  Additionally, "[a]fter hours, [Mr. Lynum] had to write and answer e-mails and evaluate sales areas on [his] own time."  (Lynum's Decl. ¶ 3.)  He also "routinely worked in excess of forty hours in a week and was not paid overtime."[2] (Lynum's Decl. ¶ 3.)

_____

[1] Although Mr. Lynum's Declaration does not indicate the geographical region in which he worked, Mr. Pickering does not contest Lorillard's representation that Mr. Lynum worked in the same region as he.  (Def.'s Br. 24.)

[2] Mr. Lynum is the only individual who has filed a written consent to participate in this proposed collective action.  (Consent (Doc. # 58).)

The second declaration is from Mr. Kirkham, who worked for Lorillard as a division manager from May 2001 until March 2010 and was Mr. Pickering's direct supervisor.  In his declaration, Mr. Kirkham opines that the "job requirements, responsibilities and duties" of a Lorillard sales representative "employed within the Southeastern United States and within states located along the Atlantic coast" are "essentially the same."  (Kirkham's Decl. ¶ 2 (Ex. C to Doc. # 36).)  He further contends that Lorillard's "job description for Sales Representatives . . . [is] consistent among all regions."  (Kirkham's Decl. ¶ 2.)  In particular, Mr. Kirkham says that, during his employment, "[t]he primary job duties of Lorillard Sales Representatives w[ere] neither to conduct nor [to] execute any sales, exchanges, contracts to sell, consignments for sale, or shipments for sale," but rather "[t]he primary duty of a Lorillard Sales Representative was promotional."  (Kirkham's Decl. ¶¶ 3–4.)  Mr. Kirkham provides no specific statements about the work hours of sales representatives, whether they typically work more than forty hours in a work week, or whether he expected Mr. Kirkham to respond to e-mails off the clock (or knew that Mr. Pickering would have to work more than forty hours a week to respond to e-mail queries).

Lorillard also maintains a position profile questionnaire, which is the equivalent of a job description for Lorillard's sales representatives.  (Job Description

(Ex. G to Doc. # 36 (enumerating "accountabilities" describing "the end results of job duties").)  Mr. Seger, Lorillard's Rule 30(b)(6) representative, testified that the "accountabilities" are the same for all Lorillard's sales representatives, but that "how [those accountabilities] are implemented can vary depending" on location.  (Seger's Dep. 12 (Ex. E to Doc. # 36).)  The accountabilities do not include any discussion of daily or weekly work hour requirements.

## D.    This Lawsuit

### 1.    The Amended Complaint and the Answer

In the governing Amended Complaint,[3] Mr. Pickering alleges that Lorillard misclassified him as an FLSA-exempt employee and failed to pay him "overtime at a rate of one and one-half his regular rate of pay for all hours worked in excess of forty . . . within a work week," and that Lorillard has a "wrongful pattern or practice" of improperly classifying its sales representatives as FLSA-exempt employees.  (Am. Compl. ¶ 13 (Doc. # 23).)  Mr. Pickering seeks to recover, on behalf of himself and all similarly situated employees, unpaid overtime wages, liquidated damages, prejudgment interest, attorney's fees and costs.  (Am. Compl. ¶¶ 19–20, 24–25.)

---

[3] The original Complaint was dismissed because Mr. Pickering's collective action allegations lacked the level of factual specificity required to survive Lorillard's Rule 12(b)(6) motion.  (Mem. Op. & Order 4 (Doc. # 20)); *see* Fed. R. Civ. P. 12(b)(6).  Mr. Pickering subsequently filed the governing Amended Complaint in an effort to cure the pleading deficiencies.

Lorillard's Answer raises a number of affirmative defenses. It asserts that several statutory exemptions, including the outside salesperson exemption and the administration exemption, exclude its sales representatives from the FLSA's overtime requirements. It also denies that any violations were willful. (Answer 5 (Doc. # 24).)

**2.      *The Discovery Procedure***

At the initial stages of this litigation, the parties jointly requested a two-phase, discovery process, with the first phase focused on certification as a collective action and the second phase focused on discovery related to the merits and damages. (Report of Parties' Planning Meeting 1–2 (Doc. # 26).) Incorporating the parties' request, the Uniform Scheduling Order allotted three months for the first phase of discovery. (USO § 7 (Doc. # 27).) Also at the parties' request, the USO set a deadline one month after the close of the first phase of discovery for Mr. Pickering to file his motion for conditional certification of a collective action and proposed notice. (USO § 7.) Subsequently, the three-month discovery deadline was extended to four months, and the deadline for Mr. Pickering to file his motion for conditional certification of a collective action also was extended an additional month. (Parties' Joint Mot. (Doc. # 29); Order Granting Joint Mot. (Doc. # 30).) With the extensions, the first phase of discovery was to expire on August 1, 2011, and the motion for

9

conditional certification as a collective action was to be filed no later than September 1, 2011.

The USO also governed the deadlines for expert disclosures.  Mr. Pickering was given until June 1, 2011, to identify any expert witnesses and provide the reports of retained experts.  Lorillard's deadline was July 1, 2011.  (USO § 8.) It is undisputed that Mr. Pickering did not disclose the identity of his sole expert witness until October 27, 2011, when he filed his reply brief in support of his motion for conditional certification of a collective action.

### 3.   Mr. Pickering's Motion for Conditional Class Certification and Judicial Notice

Mr. Pickering timely filed his motion requesting conditional certification of a collective action and that judicial notice be sent to putative class members.  (Pl.'s Mot. ¶¶ 1–2 (Doc. # 36).)  Additionally, Mr. Pickering was permitted to file out-of-time his proposed judicial notice.  The proposed notice includes within the class "all current and former Lorillard . . . employees who were employed as Sales Representatives for any length of time during the period July 22, 2007, to present." (Proposed Notice 1 (Doc. # 38).)

### 4.    *Mr. Pickering's Motion to Compel*

In his brief in support of his Motion for Conditional Class Certification, Mr. Pickering contends that his attempts to obtain written declarations from other Lorillard sales representatives concerning their job duties and pay have been stymied by Lorillard's policy that prohibits employees, under the threat of criminal and civil liability, from disclosing to outsiders any "confidential business information." (Pl.'s Br. 39–41; Policy (Ex. I to Doc. # 36).)  In support of his contention, Mr. Pickering submits a declaration from his counsel's investigator, John R. Meek, who attests that, "[w]hile interviewing current employees, [he] learned that they could not speak with [him] because of a company policy prohibiting it." (Meek's Decl. ¶ 3 (Ex. J to Doc. # 36).)  Mr. Meek summarizes conversations he had with twelve current Lorillard employees, between July 11 and July 14, 2011 (approximately two-and-a-half weeks prior to the four-month discovery deadline).  The majority of these employees refused to speak with Mr. Meek on substantive matters pertaining to this lawsuit, stating either that they had to "clear it" with a supervisor, that they had been instructed to refer him to Lorillard's legal department or simply that they could not talk with him about this case.  (Meek's Decl. (Ex. J to Doc. # 36).)  All told, Mr. Meek "was unable to obtain a written declaration from any of these employees concerning job duties or pay." (Meek's Decl. ¶ 6.)  Mr. Pickering believes that because of this policy, which

he contends is retaliatory, Lorillard's employees "are afraid to exercise their legal rights under the FLSA." (Pl.'s Br. 35.)

Mr. Pickering concedes that he has "stopped short of amending his Complaint" to allege an FLSA retaliation claim. (Pl.'s Reply 4 (Doc. # 59).) He also does not refute Lorillard's representation that he did not subpoena any of the sales representatives contacted by Mr. Meek or attempt to take any depositions, other than Lorillard's Rule 30(b)(6) representative (Mr. Seger). Mr. Pickering argues, however, that the court "certainly has the equitable authority to remedy" Lorillard's alleged retaliatory conduct. (Pl.'s Reply 4.)

In the event the court finds that Mr. Pickering's evidence is insufficient to warrant conditional certification as a collective action, Mr. Pickering raises an alternative motion to compel. The motion to compel, incorporated in his brief, seeks an order that Lorillard "produce the names, addresses, telephone numbers and social security numbers for all putative Plaintiffs who work or have worked for [Lorillard] for the three (3) year period prior to the filing of this lawsuit." (Pl.'s Br. 39.) The motion to compel also contains a request for an Order instructing Lorillard to "produce a letter stating that sales representatives, if they choose to do so, may testify or participate in this case without fear of retaliation," and further requests that the statute of limitations on all putative class members be tolled as of the filing date of

this lawsuit, and that the time for filing a second motion for conditional certification as a collective action be extended for ninety days.  (Pl.'s Br. 41.)  This alternative motion to compel was filed three weeks after the close of the first phase of discovery.

## IV.  DISCUSSION

**A.**   **Motion for Conditional Class Certification and for Judicial Notice**

Mr. Pickering moves for conditional certification of a collective action of current and former sales representatives employed by Lorillard nationwide within the three years preceding the filing of this lawsuit and for court-authorized notice to potential class members.  He seeks overtime compensation for all time worked in excess of forty hours per week for himself and to represent all "similarly situated" current and former sales representatives subject to Lorillard's uniform policy of treating sales representatives as exempt employees.

The FLSA requires employers to pay employees one and one-half times their regular rates of pay for all hours worked in excess of forty in a work week if the employees are not "exempt" under several recognized categories.  29 U.S.C. § 207. Employees may be exempt from mandatory overtime compensation if they are employed in an administrative capacity or as outside salespersons.  *See* 29 U.S.C. § 213(a)(1) (administrative employee and outside salesperson exemptions); 29 C.F.R.

§ 541.200 (defining administrative employee exemption); 29 C.F.R. § 541.500 (defining outside salesperson exemption).

Moreover, the FLSA's collective action provision authorizes a plaintiff seeking relief for unpaid overtime compensation to bring a collective action, provided that the employees are "similarly situated" and opt into the suit by filing "written consent." 29 U.S.C. § 216(b). When the requirements of § 216(b) are met, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

As will be fleshed out below, the parties' arguments require analysis of (1) what is the standard of proof required to authorize conditional certification of a collective action and judicial notice to potential opt-in plaintiffs, (2) whether further discovery should be permitted, (3) whether there is evidence that Lorillard's sales representatives are similarly situated nationwide, and (4) whether there is evidence that other sales representatives want to opt-in this proposed collective action.

## 1.    *The Standard of Proof*

The initial issue is whether Mr. Pickering has made the requisite showing to justify conditional certification of a nationwide collective action and court-authorized notice. In *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208 (11th Cir.

14

2001), the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry.[4]  *Id.* at 1219.  Under the first tier, which is labeled the "notice stage," the district court must decide, "usually based only on the pleadings and any affidavits which have been submitted[,] . . . whether notice of the action should be given to potential class members." *Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, (2003))).  Before notice is given, a "district court should satisfy itself that there are other employees of the [defendant-]employer who desire to 'opt-in' and are 'similarly situated' . . . ." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

"Similarly situated" is not defined in the FLSA.  The Eleventh Circuit also has not "adopted a precise definition of the term"; however, it has provided some guidance.  *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259–60 (11th Cir. 2008).  Employees should be "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* at 1259 (citing *Dybach*,

---

[4] The collective action in *Hipp* was brought under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-34.  Because the ADEA requires plaintiffs seeking to certify a class to use the opt-in class mechanism provided in § 216(b), *Hipp*'s analysis is relevant to FLSA collective actions.  *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003) (citing *Hipp*, 252 F.3d at 1216).

942 F.2d at 1568).  And "similar" does not mean "identical."  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citation and internal quotation marks omitted).  At the same time, however, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of duties and pay provisions." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314  (M.D. Ala. 2002) (Albritton, J.), *cited with approval in Anderson v. Cagles's , Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).  "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."  *Id.*

The plaintiffs' burden at the notice stage "is not heavy."  *Grayson*, 79 F.3d at 1097.  "The plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination."  *Id.*  That burden may be satisfied by "substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  *Id.* (citation and internal quotation marks omitted).  *Hipp* described this standard as "fairly lenient," given that generally the evidence is meager early in the litigation. 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214).   However, notwithstanding this fairly lenient standard, "there must be more than 'only counsel's

unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores.'" *Morgan*, 551 F.3d at 1261. Additionally, under the first step of the *Hipp* analysis, district courts "should treat the initial decision to certify and the decision to notify potential collective action members synonymous." *Morgan*, 551 F.3d at 1261 n.40.

The second stage generally is where the rubber meets the road. It is "'typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial.'" *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214). Armed with "'much more information,'" the court "'makes a factual determination on the similarly situated question.'" *Id.* (quoting *Mooney*, 54 F.3d at 1214). Factors that the court may consider are the "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Morgan*, 551 F.3d at 1261 (citation, alterations and internal quotation marks omitted). At this stage, the similarities "must extend beyond the mere facts of job duties and pay provisions and encompass the defenses to some extent." *Id.* at 1262 (citation and internal quotation marks omitted). Depending on the outcome of the similarly situated evidentiary analysis, the district court either allows the collective action to proceed to trial, or decertifies the class,

17

dismissing the opt-in plaintiffs without prejudice and permitting the original plaintiffs to go to trial on their individual claims.[5]  *See id.* (citing *Hipp*, 252 F.3d at 1314).

Because Mr. Pickering contends that "very limited discovery has been conducted," he heavily relies upon the fairly lenient burden that an FLSA plaintiff bears during the first stage of the *Hipp* analysis.  (Pl.'s Reply 13; *see also* Pl.'s Reply 12 ("Plaintiff has taken only one deposition.").)   On the other hand, Lorillard emphasizes that Mr. Pickering sought and the court approved a bifurcated discovery schedule to allow three months (which was later extended to four months) of discovery on the issue of conditional certification of a collective action.  (Def.'s Br. 20.)  Given that Mr. Pickering had the opportunity to conduct discovery, Lorillard contends that a "more rigorous standard" for evaluating the appropriateness of conditional certification should be applied, and that any shortage of discovery is Mr. Pickering's fault alone.  (Def.'s Br. 20.)  Lorillard also retorts that, while it is true that Mr. Pickering "t[ook] one deposition," this is so "only because . . . he elected . . . to take one deposition."  (Def.'s Surreply 3.)

---

[5] The Eleventh Circuit has declined to "specify how plaintiffs' burden of demonstrating that a collective action is warranted differs at the second stage."  *Anderson*, 488 F.3d at 953.  In *Anderson*, the court explained:  "It is sufficient to conclude . . . that at the second stage plaintiffs may – the ultimate decision rests largely within the district court's discretion – not succeed in maintaining a collective action under § 216(b) based solely on allegations and affidavits, depending upon the evidence presented by the party seeking decertification."  *Id.*

Lorillard's position finds support in the decisional law of district courts in this circuit. Courts have departed from *Hipp*'s more lenient standard where a period of discovery preceded the filing of the motion for conditional certification of a collective action. In *White*, because there had been "extensive discovery," the court "carefully consider[ed] the submission of the parties with respect to the class allegations, rather than merely relying on the handful of affidavits that support[ed] [the plaintiff's] position." 204 F. Supp. 2d at 1313 n.2. In *Davis v. Charoen Pokphand (USA) Inc.*, 303 F. Supp. 2d 1272 (M.D. Ala. 2004) (Thompson, J.), the court also rejected the plaintiffs' argument for a *Hipp* first-stage review in favor of a more exacting review. The *Davis* court explained that "[t]he rationale for the 'fairly lenient standard' . . . disappears . . . once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures." *Id.* at 1276 (internal citations omitted); *see also Ledbetter v. Pruitt Corp.*, No. 05cv329, 2007 WL 496451, at *2 (M.D. Ga. Feb. 12, 2007) (Royal, J.) (finding that, because the motion for certification was filed after the close of discovery, the case was "in a different procedural posture than that envisioned by *Hipp*" and "therefore a more searching standard of review [was] appropriate"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (Albritton, J.) (considering the defendant's evidence in deciding whether to conditionally certify an FLSA collective action because there was

"fairly extensive evidence on the issue of whether putative class members [were] similarly situated"); *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995) (Blackburn, J.) (analyzing the motion for conditional certification of a collective action in light of the extensive discovery conducted by the plaintiff).

The reasoning of the foregoing cases is persuasive. *Hipp* envisions that the certification process will begin early in the litigation prior to discovery and, thus, gives plaintiffs some leeway in proof at the initial stage. When the parties have had access to discovery and the opportunity to amass evidence in support of the complaint's collective action allegations, the protection provided by *Hipp*'s first stage review is no longer needed. That is what happened in this case. The parties asked the court to forego an initial decision on collective action certification, in favor of first permitting discovery. The parties jointly requested, in all, four months to conduct discovery, and Mr. Pickering requested permission to file his motion for conditional certification of a collective action at the five-month mark. Those requests were granted. The rationale for applying the fairly lenient standard in *Hipp* no longer fits the procedural posture of this case. It is appropriate, therefore, to apply a stricter, more searching, standard of review than that advocated in *Hipp* for a first-stage review. Thus, Mr. Pickering will not be permitted to rely on the allegations in the

Amended Complaint. Rather, he must rely on the evidence, and all the evidence will be considered, not just Mr. Pickering's. With that said, the court need not define precisely where along the continuum of proof this case lies. If this case were at the beginning stages, it is dubious that Mr. Pickering would satisfy *Hipp*'s fairly lenient standard. Moreover, after four months of discovery, Mr. Pickering has produced only limited evidence of the job duties of sales representatives in his region, and none of the job duties of sales representatives outside his region, and he has submitted no evidence that any other sales representative besides himself and one other regional sales representative actually worked overtime. It is clear based upon this evidence, standing alone and juxtaposed against Lorillard's evidence of sales representatives' duties outside Mr. Pickering's region, that the evidence is insufficient to warrant conditional certification of a nationwide collective action.

### 2. *Motion to Compel*

Alternatively, Mr. Pickering asks for more time to conduct discovery and for an order compelling Lorillard to produce discovery and to provide assurances to its sales representatives that they can participate in this litigation without retaliation. These requests come too late.

Mr. Pickering did not suggest during the four-month, first-phase discovery period that Lorillard was hampering his discovery efforts. Indeed, ten weeks into the

discovery period, in a joint motion to extend the discovery period, the parties represented that they had "in good faith cooperated," that they were "engaged in written discovery concerning conditional class certification (including serving and responding to document requests, interrogatories, and deposition notices)," and that they "[were] in the process of exchanging documents, and h[ad] agreed upon depositions." (Joint Mot. ¶ 2 (Doc. # 29).) No discord between the parties was cited in that motion.

Moreover, it appears that Mr. Pickering learned, at the latest, three weeks prior to the close of the four-month discovery period about Lorillard's policy that he now contends prevented him from talking to Lorillard's sales representatives. He did not raise this alleged discovery barricade at that time. Instead, he waited until six weeks later – more than three weeks after the close of discovery on conditional collective action certification – to bring his discovery problems to the attention of the court and, even then, only as an alternative request in his brief in support of his motion for conditional certification.

Mr. Pickering does not explain why he did not file a motion to compel during the discovery period, why he did not use available discovery tools to compel testimony from the alleged recalcitrant witnesses, why he waited until he filed his motion for conditional certification of a collective action to raise the issue, or why

even then he styled his motion to compel as an alternative request.  Absent any explanation from Mr. Pickering, the court must conclude that he was dilatory in waiting twenty-five days after the close of discovery on conditional certification to raise the issue that Lorillard prevented him from obtaining the discovery needed to support his motion for conditional certification as a collective action.  On this record, permitting the parties to litigate the motion to compel would neither advance the interests of justice nor further efficient use of judicial resources.  Moreover, Lorillard has protested that it would suffer prejudice from additional discovery at this late stage.

In sum, no ground has been offered that warrants consideration of the untimely motion to compel.  The motion to compel, therefore, will be denied,[6] and additional discovery on the issue of conditional certification will not be permitted.  *See, e.g., Evans v. Boyd Rest. Group, LLC*, 240 F. App'x 393, 397 (11th Cir. 2007) (holding that "[t]he district court did not abuse its discretion when it denied the request to extend discovery, which was made the day before the end of the discovery period with no explanation for the delay").  Mr. Pickering is stuck with the evidence he has.

---

[6] An additional basis exists for denying the motion to compel; it does not contain the certification required by Rule 37(a) of the Federal Rules of Civil Procedure.  Written communications between counsel do not constitute a conference.  Discovery motions must be accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.

### 3.    *Similarly Situated*

In support of his position that other Lorillard sales representatives are similarly situated and in actuality non-exempt employees, Mr. Pickering relies upon the declarations from Mr. Lynum, a one-time sales representative in his region, and from Mr. Kirkham, Mr. Pickering's former division manager. (Pl.'s Br. 36.) He also cites Lorillard's written job description and policy that a sales representative's "operations may require a longer work day" than 8:00 a.m. to 5:00 p.m. (Pl.'s Reply 18 (citing Ex. C to Doc. # 59).) This evidence is insufficient to justify a nationwide collective action.

First, Mr. Pickering's and Mr. Lynum's declarations are too localized to support a nationwide collective action. The declarations are limited to describing their own specific job duties. Neither Mr. Pickering nor Mr. Lynum mentions the duties of other sales representatives, contends that his job duties are typical of those of sales representatives either within or outside his division, or claims to be familiar with the job duties of other Lorillard sales representatives. Indeed, Mr. Pickering admits that he has no knowledge of how other sales representatives outside his division (of six to eight sales representatives) perform their work. (Pickering's Dep. 88–89.) Hence, these two declarations do not provide a glimpse of what other Lorillard's sales representatives in other regions of the country do.

The third declaration from Mr. Kirkham does not fill the void left by Mr. Pickering's and Mr. Lynum's declarations.  Mr. Kirkham's bare statements that the job duties of sales representatives are "essentially the same" and "consistent among all regions" are conclusory.  (Kirkham's Decl. ¶ 2.)  Also, his conclusions that the sales representatives' job duties are not sales-oriented, but instead are "promotional," merely track the legal phrases cited in the relevant FLSA regulations, without any supporting factual details.  (*Compare* Kirkham's Decl. ¶¶ 4–7 (using phrases "primary duty" and lack of "discretion"), with 29 C.F.R. § 541.200 (defining the "primary duty" of an administrative employee as encompassing the "exercise of discretion") and 29 C.F.R. § 541.500 (defining the "primary duty" of an outside salesperson as "making sales").  The declaration lacks any factual particulars about the job duties actually performed on a daily basis by sales representatives, the time devoted each day to those duties, or the level of direct supervision exercised over those duties.  Not only is Mr. Kirkham's declaration conclusory, but it is limited in geographical scope to the Southeastern and Atlantic Coastal region and, thus, neglects any information about the job duties of the rest of Lorillard's sales representatives in other parts of the United States.

Second, there is a dearth of evidence that Lorillard's alleged  unlawful policy of misclassifying its sales representatives as exempt from the FLSA's overtime

25

provisions resulted in sales representatives being denied overtime pay. There is scant evidence that Lorillard's sales representatives were required or permitted to or in fact did work more than forty hours a week.[7] Mr. Kirkham provides no information about the work hours of sales representatives, whether they typically work more than forty hours in a work week, or whether they performed required administrative tasks in the evening in addition to working a forty-hour week. Mr. Kirkham's declaration also is notably silent as to Mr. Pickering's "impression" that he (Mr. Kirkham) expected or knew that Mr. Pickering would have to respond to e-mails at home in the evening. (Pl.'s Dep. 118.) Furthermore, neither Mr. Pickering nor Mr. Lynum provides any information relating to Lorillard's employment practices pertaining to the number of hours other sales representatives actually worked.[8]

This leaves Mr. Pickering's belief that other sales representatives in his division also were "spending a lot of time at night on e-mails," but that belief by itself carries no evidentiary weight. (Pl.'s Dep. 111, 124–25); *cf. Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002) ("[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating

---

[7] *See* 29 C.F.R. § 785.11 (2008) ("Work not requested but suffered or permitted is work time.").

[8] It should be noted that Lorillard's employees who refused to talk to Mr. Meek appeared to have worked in Mr. Pickering's region and, thus, are not a representative cross-section of sales representatives employed in other regions.

a genuine issue of fact about the existence of that certain fact."); *see also Boyd v. Alutiiq Global Solutions, LLC*, No. 11cv753, 2011 WL 3511085, at *6 (N.D. Ill. Aug. 8, 2011) ("[D]eclarations filed in support of a motion for conditional certification must be based on personal knowledge.").  Even if it did, his belief addressing the duties of the six or eight sales representatives in his division would be of limited utility for justifying nationwide certification.  The only evidence supporting his allegations that Lorillard's sales representatives were required to work overtime performing administrative tasks comes from Mr. Pickering himself and one other sales representative in his region.  Evidence consisting of declarations from two sales representatives from the same region is insufficient to warrant nationwide collective action certification for sales representatives in all of Lorillard's 787 territories, 122 divisions, 20 regions, and 4 areas across the country.  *Cf. Ohsann v. L.V. Stabler Hosp.*, No. 2:07cv875, 2008 WL 2468559, at *2 (M.D. Ala. 2008) (Watkins, J.) (putative FLSA class members were subject to an automatic thirty-minute payroll reduction for a meal break, but routinely were required to work a portion of that meal period without being paid overtime).

Third, a standardized job description is insufficient to justify a nationwide collective action based upon a claim that the employer improperly classified a category of employees as exempt.  In *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265

(M.D. Ala. 2004), for example, the plaintiffs attempted to conditionally certify an FLSA collective action of all managers and assistant managers nationwide, who they alleged had been improperly classified as exempt from overtime. Noting that it was not a case where "janitors are being classified as exempt executives," the court declined to find that all managers were "similarly situated" based on the fact that they were all classified as exempt and all had the same job description. *Id.* at 1271–73. Rather, the court found that it must analyze the *nature* of each employee's job duties, and the degree to which evidence regarding the plaintiffs' job duties can be applied to all other employees. *Id.*; *see also Forney v. TTX Co.*, No. 05cv6257, 2006 WL 1030194, at *3 (N.D. Ill. April 17, 2006) ("Whether similarly situated employees exist depends on the employee's actual qualifications and day-to-day duties, rather than their job descriptions." (collecting cases)). This rationale would appear to apply equally to the written policy providing that a sales representative's "operations may require a longer work day" because the policy does not address any of the actual work duties of individual sales representatives.[9]  (Ex. C to Doc. # 59.)

---

[9] Mr. Pickering also argues extensively that his actual job duties (i) disqualify him for the administrative exemption because he did not exercise sufficient discretion and independent judgment and (ii) disqualify him for the outside salesperson exemption because his job involved primarily promotional, rather than sales, activities.  (Pl.'s Br. 7–30, 35.)  Lorillard contends that whether its sales representatives are properly exempted involves a highly individualized inquiry into job duties, further demonstrating that this action is ill suited for conditional certification as a collective action.  (Def.'s Br. 28–29.)  These arguments need not be addressed now in light of the court's findings above that conditional certification is not warranted.  Rather, these inquiries will

In sum, there is insufficient evidence that Mr. Pickering and the broad class he wishes to represent are similarly situated with respect to job duties.  He fails to show sufficient evidence of similarly situated sales representatives or any basis from which to conclude that a pattern and practice of FLSA overtime violations permeates nationwide, notwithstanding that he had four months to conduct discovery.  This conclusion can be reached without consideration of the declarations submitted by Lorillard.  These declarations suggest, however, that Lorillard's sales representatives in regions outside Mr. Pickering's have varied job duties, depending upon, for example, whether the sales representative services independent or chain stores, the volume of sales of these stores, whether the sales representatives interact with wholesalers, and the size of the territory.  In other words, Lorillard's evidence lends no support to Mr. Pickering's contentions.[10]

### 4.    *Number of Opt-in Plaintiffs*

Mr. Pickering also must demonstrate that there are other Lorillard sales representatives who have an opt-in interest in this litigation.  *See Dybach*, 942 F.2d at 1567–68.  "[U]nsupported expectations that additional plaintiffs will subsequently

---

be taken up on a merits examination of Mr. Pickering's individual claims.

[10] The court is not making a credibility determination because Mr. Pickering has no competent evidence addressing the job duties of sales representatives outside his region.

come forward" are insufficient.  *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003).

Over the eighteen-month course of this litigation, only one plaintiff has filed a consent form to join this action as an opt-in plaintiff.  Mr. Pickering has no other evidence that any other sales representative shares the same interest in this litigation as he and Mr. Lynum.  The only other evidence pertaining to interest comes from Lorillard, whose declarants have represented that they have no desire to join this lawsuit as opt-in Plaintiffs.  Mr. Pickering's failure to show that there are others who want to opt in also precludes granting his motion for conditional certification of a collective action.

### 5.    *Conclusion*

Mr. Pickering's evidence is inadequate for approving conditional certification of a collective action and judicial notice.  Accordingly, this lawsuit will proceed as an FLSA lawsuit by a single employee against his former employer for alleged violations of the FLSA's overtime laws.[11]

---

[11] The court need not address Lorillard's argument that the temporal scope of the conditional class should be limited to the two years preceding the filing of this suit pursuant to 29 U.S.C. § 255(a) because the alleged violations were not willful.

**B.**      **Lorillard's Motion to Exclude Mr. Pickering's Expert Testimony**

In his reply brief, Mr. Pickering relies on an affidavit from his expert, Lyndel L. Erwin, who was employed by the Wage and Hour Division of the United States Department of Labor for more than thirty-five years.  In that affidavit, Mr. Erwin opines that Lorillard's sales representatives are "similarly situated in job duties," are "subject to a common practice of being treated as exempt salaried employees in violation of the FLSA," and do not qualify for the administrative or outside salesperson exemptions.  (Pl.'s Reply 2, Ex. A.)  It is undisputed that Mr. Pickering disclosed the identity and affidavit of Mr. Erwin for the first time when he filed his reply brief on October 27, 2011.

Lorillard moves to exclude Mr. Erwin's testimony for failure of Mr. Pickering to comply with the June 1, 2011 deadline for disclosure of experts.  (*See* USO § 8); *see also* Fed. R. Civ. P. 37(a).  It contends that at this late date, it will suffer substantial prejudice if the affidavit is considered.  Lorillard further asserts that Mr. Erwin offers improper testimony regarding legal conclusions, namely whether Mr. Pickering was exempt from the FLSA as an administrative employee or outside salesperson and whether Lorillard's sales representatives are similarly situated.  (Def.'s Br. on Mot. Strike 10 (Doc. # 61).)

Mr. Pickering responds that the USO's June 1, 2011 deadline does not govern the disclosure of Mr. Erwin's expert opinions because his affidavit is submitted solely in rebuttal to Lorillard's evidence, in particular declarations from four of Lorillard's division managers.[12]  Because these declarations allegedly "are replete with testimony that far exceed that of a lay opinion," Mr. Pickering argues that he should be permitted to counter Lorillard's expert testimony with his own expert testimony, as provided in Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure.[13]  (Pl.'s Resp. to Mot. Strike 3 (Doc. # 64).)  Mr. Pickering concedes, however, that Mr. Erwin cannot testify about legal conclusions and that "[a]ny statement within [Mr. Erwin's expert affidavit] . . . that this court finds as directing the court to a legal conclusion should be stricken."  (Pl.'s Resp. to Mot. Strike 8.)

Lorillard replies that the declarations from its employees do not contain expert testimony, but rather contain testimony based upon knowledge garnered about Lorillard's business by virtue of their positions, as anticipated by Rule 701 of the Federal Rules of Civil Procedure.  (Def.'s Reply 3 (Doc. # 71).)  Lorillard asserts that Mr. Pickering merely is attempting to evade the expert witness disclosure

---

[12] These division managers are Stacy Bradberry, Stacy Coligan, Hoon Kim, and Kevin Sunderland.  (Docs. # 48, 49, 52, 56.)

[13] Mr. Pickering has not argued that the declarations should be excluded for failure of Lorillard to disclose the declarants' identities by the July 1, 2011 expert disclosure deadline. (*See* USO § 8.)

requirements set forth in Rule 26(a)(2) by improperly characterizing the declarations as containing expert testimony that required Mr. Erwin's rebuttal.  (Def.'s Reply 4.)

The disclosure of expert testimony and reports is governed by Rule 26(a)(2) of the Federal Rules of Civil Procedure.  Rule 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Rule 26(a)(2)(B) sets forth additional requirements for an expert who is "retained or specially employed," such as requiring "a written report . . . prepared and signed by the witness."  Rule 26(a)(2) disclosures must be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D)(i).  The court-ordered deadline for Mr. Pickering to make his Rule 26(a)(2) expert disclosures was June 1, 2011.  (USO § 8.)

Rule 26(a)(2)(D)(ii) provides, however, that a party may identify a rebuttal expert "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under 26(a)(2)(B) . . . ."  Rule 26(a)(2)(D)(ii) thus focuses on rebutting evidence offered by another party's expert witness; it does not apply to testimony offered under Rule 701. *See* Fed. R. Evid. 701 (defining the limits of opinion testimony by lay witnesses).

The initial inquiry is whether the declarations of Lorillard's four division managers consist of expert testimony.  If they do not, then Mr. Pickering cannot rely

33

on Rule 26(a)(2)(D)(ii) to excuse his failure to comply with the USO's June 1, 2011 expert disclosure deadline.

Rule 701 allows a lay witness to offer opinions or inferences if they are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In *Tampa Bay Shipbuilding & Repair Co.*, 320 F.3d 1213 (11th Cir. 2003), relied upon by Lorillard, the Eleventh Circuit rejected an argument that a company's employees, who were involved in repairing the ship in dispute, could not offer lay opinions about the reasonableness of the company's charges and hours expended to repair the ship. The argument was based upon the then-new addition of subsection (c) to Rule 701. Relying on the Advisory Committee Notes to the 2000 amendments to Rule 701, the Eleventh Circuit concluded that "testimony by business owners and officers based on knowledge derived from their positions is one of the prototypical areas intended to remain undisturbed" by Rule 701's amendment. *See id.* at 1221-22; *see* Fed. R. Evid. 701, 2001 advisory committee's note ("[M]ost courts have permitted [owners and officers] to testify . . . without the necessity of qualifying the witness as an . . . expert . . . based upon . . . the particularized knowledge that the witness has by virtue of his or her position in the

34

business.  The amendment does not purport to change this analysis."); *see also United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011) ("As the Advisory Committee made clear and as we have held, . . . Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." (citing *Tampa Bay Shipbuilding & Repair Co.*, 320 F.3d at 1221–22)).

Lorillard's four division managers based their testimony on their particularized knowledge gained from their years of experience working for Lorillard in its managerial sales operations.  Each has worked more than a decade supervising Lorillard's sales representatives.  (Bradberry's Decl. (eighteen years as a division manager); Coligan's Decl. (fourteen years as a division manager); Kim's Decl. (fourteen years as a division manager); Sunderland's Decl. (thirty years with Lorillard in management positions).)  These division managers possess firsthand knowledge of the job duties of sales representatives based upon their employment with Lorillard.  Given their decades of experience, their testimony is rationally based on their perceptions of what a sales representative does and does not do.  That testimony is helpful for resolving the similarly situated inquiry.  As in *Tampa Bay Shipbuilding*, their testimony is not based on expert knowledge, but is permissible under Rule 701.[14]

---

[14] It is worth noting that Mr. Pickering does not contend that the division manager declaration submitted by him is governed by Rule 702.

Because Rule 26(a)(2) does not apply to Lorillard's division manager declarations, the court rejects Mr. Pickering's contention that the disclosure of Mr. Erwin is controlled by Rule 26(a)(2)(c).

Lorillard moves to exclude Mr. Erwin's affidavit based upon Rule 37(c)(1), which provides, in pertinent part, that a party who "fails to provide information or identify a witness as required by Rule 26(a)[,] . . . is not allowed to use that information or witness to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The failure to provide notice was without substantial justification, for the reasons set out above, and that failure was not harmless. The identity of Mr. Erwin was disclosed fifteen months after this lawsuit's filing, nearly three months after the expiration of discovery on conditional class certification, almost five months after the deadline for Mr. Pickering to disclose his expert witnesses, and almost four months after the deadline for Lorillard to disclose its expert witnesses. The tardy disclosure deprived Lorillard of the opportunity to depose Mr. Erwin, to conduct discovery to challenge Mr. Erwin's opinions and/or qualifications, and to prepare and submit a rebuttal expert report.

(Def.'s Br. on Mot. Strike 5–6 (Doc. # 61).)  For these reasons, the court finds that Lorillard's motion to exclude the testimony of Mr. Erwin is due to be granted.[15]

## V.  CONCLUSION

For the foregoing reasons, Mr. Pickering fails to show that an order conditionally certifying an FLSA collective action or an order compelling discovery is warranted.  Additionally, Mr. Pickering's failure to disclose his expert witness within the time prescribed by the USO is neither substantially justified nor harmless. Accordingly, it is ORDERED that (1) Mr. Pickering's Motion for Conditional Class Certification and for Judicial Notice (Doc. # 36) is DENIED, (2) Mr. Pickering's Motion to Compel (Doc. # 36-1) is DENIED, and (3) Lorillard's Motion to Strike Plaintiff's Expert Affidavit and Exclude Testimony from Plaintiff's Expert (Doc. # 60) is GRANTED, but Lorillard's request for costs, expenses and attorney's fees incurred in connection with filing the motion is DENIED.

DONE this 30th day of January, 2012.

_____
        /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

---

[15] In the court's discretion, Lorillard's request for costs, expenses and attorney's fees incurred in connection with filing the motion to exclude is due to be denied.

37